

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED 01/16/2009**

| | |
|---|---|
| IN RE ) | |
| ) | |
| JAMES C. ROLLINGS, ) | CASE NO. 04-31511-H3-7 |
| ) | |
| Debtor, ) | |
| ) | |
| REX-TECH INTERNATIONAL, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | ADV. NO. 05-3358 |
| ) | |
| JAMES C. ROLLINGS and ) | |
| W. STEVE SMITH, TRUSTEE ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

The court has held a trial on the merits in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

James C. Rollings ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 31, 2004. The case was converted to a case under Chapter 7 by order entered

June 14, 2004.  W. Steve Smith ("Trustee") is the Chapter 13 Trustee.

In the complaint in the instant adversary proceeding, Rex-Tech International, LLC ("Rex-Tech") seeks an order directing Debtor to provide "documentation which demonstrates his and/or the bankruptcy estate's ownership interest in the 14" ID 5' long ram hydraulic cylinder and the National 1320M Drawworks (including any records regarding the Debtor's claims to any drum shaft in the possession of Rex-Tech) together with documents regarding the ownership of any any and all parts associated with the cylinder and the drawworks in which the Debtor or the estate claim any interest...Rex-Tech further asks this Court to schedule a hearing to determine the interests of the Estate, the Debtor, Rex-Tech, and any other party in these disputed assets."  (Docket No. 1).

Trustee's answer requests that the "Court order the turn over to Trustee the National 1320M Drawworks and that he have such other and further relief as is just."  (Docket No. 6). Debtor's answer requests that the court "schedule a hearing on this application; upon hearing, the Court enter an order affirming the interest of the Bankruptcy Estate and ordering immediate turnover of the National 1320M Drawworks and drum shaft, and the 14" ID 5' long Ram Hydraulic Cylinder; and Mr.

2

Rollings have such further relief as may be appropriate and just, including but not limited to, the requested sanctions against the Plaintiff and his counsel."[1]  (Docket No. 5).

Rex-Tech called Debtor as an adverse witness.  Debtor testified that from 1999 through 2003 he was an employee of Rex-Tech.

When Debtor's employment with Rex-Tech ended, Debtor asserted ownership of oilfield equipment, consisting of a rotary table with its associated equipment, a set of bookshelves with books, and a "1320M mechanical draw works S/N 243713-20" (Rex-Tech Exhibit 1).  Debtor testified that he also asserts ownership of a hydraulic cylinder and also of a drum shaft attached to the drawworks.

The assets of Rex-Tech were sold at a foreclosure sale, with the purchaser purchasing the assets in bulk.  Debtor testified that, prior to the foreclosure sale, he labeled the items which he asserted were his, at Rex-Tech's business premises.

Some of the disputes with respect to the assets have been resolved.  Trustee and Debtor have stipulated that there is no dispute between them as to the assets at issue in the above

---

[1] The court has separately addressed the request for sanctions.

captioned adversary proceeding.  The only issues remaining in the instant adversary proceeding are between Trustee and Rex-Tech as to ownership on the petition date of the drawworks, the cylinder, and the drum shaft.[2]

Debtor testified that, during 2000, he purchased the cylinder from Cardwell International, using his personal funds. Debtor testified that he purchased the drawworks from Texas International, also using his personal funds.  He testified that the drum shaft was part of the drawworks when he purchased the drawworks.  He testified that Rex-Tech permitted him and other employees to store and work on large pieces of equipment at Rex-Tech's facility.  The court finds Debtor's testimony credible.

John Fessenden, a plant manager with Cardwell International and its successors, testified that Cardwell sold hydraulic cylinders to Rex-Tech.  On direct examination, he testified that the cylinder was sold to Rex-Tech, and was picked up by Rollings.  On cross-examination, he was unable to determine if the particular cylinder at issue in the instant case was sold to Rex-Tech or to Debtor.

---

[2]The court notes that, in post-trial briefing, Trustee proposed findings of fact and conclusions of law that would support an award of damages for conversion.  The question of conversion is not raised by the pleadings in the instant adversary proceeding, and was not tried by consent.  Thus, the court does not address any issue regarding conversion.

4

James E. Petersen, Jr. identified himself as the manager and majority stockholder of Rex-Tech. He testified that he was not involved in the day to day operations of the business. He testified that Rex-Tech was one of several business in which he was involved. He testified that he was one of two persons at Rex-Tech who was permitted to sign checks. He testified that he reviewed the check stub and invoice from the vendor before signing each check.

In his testimony, Petersen identified a check payable to IRI International Corp., dated March 7, 2000, and a check stub and an invoice to which the check related, dated January 26, 2000, for a used hydraulic cylinder. (Rex-Tech Exhibits 12, 13, 18). Petersen identified a check and check stub for a $60,000 check payable to CV International. (Rex-Tech Exhibits 14, 15). The purpose of the $60,000 check is not in evidence. Petersen identified a check and a check stub for a $125,000 check payable to CV International. (Rex-Tech Exhibits 16, 17). The purpose of the $125,000 check is not in evidence.

Petersen testified that he does not know whether Rex-Tech purchased hydraulic cylinders other than the cylinder at issue in the instant adversary proceeding. He testified that he has signed checks regarding hydraulic cylinders. He testified that Rex-Tech bought and sold between ten and one hundred

drawworks during its operative existence.  He testified that he does not know whether Rex-Tech purchased more than one 1320M drawworks during its existence.

Nothing in Petersen's testimony establishes that Rex-Tech purchased any of the property at issue in the instant adversary proceeding.  The court accords Petersen's testimony supporting Rex-Tech's contention that it purchased the property of relatively low weight, in light of the fact that he was not involved in the day to day operations of Rex-Tech.  In addition, his credibility was impaired by his self interest and his personal dislike of Debtor.

Debtor testified that Trustee took possession of the rotary table, and sold it to Debtor.  Debtor testified that Trustee took possession of the drawworks, and sold it to a third party.[3]  Debtor testified that Rex-Tech borrowed the drum shaft to swap for a drum shaft located on an offshore rig.  He testified that the replacement drum shaft was reassembled and placed next to the drawworks.  He testified that, after the petition date, the replacement drum shaft was removed from the drawworks.

---

[3] It appears that Trustee is holding the proceeds of sale pending resolution of the instant adversary proceeding.

6

## Conclusions of Law

In a declaratory judgment action, the party seeking relief bears the burden of proof. In re Big V Holding Co., 267 B.R. 71 (Bankr. D.N.J. 2001). See also In re Tait, 2008 WL 4183341 (Bankr. S.D. Ala. 2008)(the party who would lose if no evidence were presented has the burden of proof in a declaratory judgment case).

Rex-Tech cites Hickey v. Couchman, 797 S.W.2d 103 (Tex. App.--Corpus Christi 1990, writ den.) for the proposition that possession of personal property raises a presumption of ownership.

> Black's Law Dictionary defines "possession" as:
>
> 1. The fact of having or holding property in one's power; the exercise of dominion over property.  2. The right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object.  3. Civil law. The detention or use of a physical thing with the intent to hold it as one's own.  4. (usu. pl.) Something that a person owns or controls;  5. A territorial dominion of a state or nation.

Black's Law Dictionary 1201 (8th ed. 2004).

As applied to the instant case, given that there was a dispute ab initio as to the ownership of the property in dispute in the instant adversary proceeding, it is not clear from the evidence that Rex-Tech "possessed" the property. See e.g. Chenoworth v. Flannery, 202 S.W.2d 480 (Tex. Civ. App.--Amarillo

7

1947).  The location of the property in dispute does not provide much useful information to the court regarding ownership, in light of Debtor's credible testimony that he and other employees were permitted to store and work on large pieces of equipment at Rex-Tech's facility.  Even if a presumption of ownership is accorded to Rex-Tech as a result of the location of the disputed items, the presumption is rebutted by Debtor's credible testimony as to his purchase of the property.  The court concludes that Rex-Tech has not met its burden of proof for a declaratory judgment determining its interest; to the contrary, the drawworks, the cylinder, and the drum shaft are property of Debtor.  To the extent the drawworks, the cylinder, and the drum shaft have not already been sold, they should be turned over to Trustee for disposition pursuant to the Bankruptcy Code and Trustee's agreement with Debtor.

      Based on the foregoing, a separate conforming Judgment will be entered.

      Signed at Houston, Texas on January 16, 2009.

*/s/ Letitia Z. Clark*
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE